**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**TOMAS A. FERNANDEZ,**

     *Plaintiff,*

vs.                           CASE NO:

**RAYONIER ADVANCED
MATERIALS, INC**., a

Foreign Profit Corporation,

     *Defendant*

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL
<u>INJUNCTIVE RELIEF REQUESTED</u>**

     Plaintiff Tomas A. Fernandez sues Defendant Rayonier Advanced

Materials, Inc., a Foreign Profit Corporation ("RYAM"), and alleges:

**I.     NATURE OF ACTION**

     1.     Mr. Fernandez's employment and termination action against

RYAM arises under the Family and Medical Leave Act ("FMLA"), including

interference and retaliation claims.

On or before December 31, 2021, Mr. Fernandez anticipates asking the Court for leave to amend his Complaint to commence a claim against James "Jay" L. Posze, Senior Vice President, Human Resources, Rayonier Advanced Materials, Inc., *in his capacity as Plan Administrator of the "Rayonier Advanced Materials, Inc. Severance Pay Plan for Salaried Executives,"* (hereafter "Severance Plan").  By its terms, the Severance Plan is purportedly governed by the Employee Retirement Income Security Act ("ERISA"). But Mr. Fernandez's claim against the Severance Plan's Administrator cannot be commenced at this time because he has not yet exhausted his administrative remedies under the terms of the Severance Plan.[1]

Additionally, in the alternative to a potential ERISA claim, Mr. Fernandez anticipates bringing a breach of contract action against RYAM upon proof that the Severance Plan is not a bona fide ERISA plan. (Mr. Fernandez includes this information about his anticipated, potential ERISA

---

[1]     On June 15, 2021, Mr. Fernandez made his written claim for benefits owed him under the Plan. The Plan allows the Administrator 90 days to to grant or deny the claim "unless an extension of time is needed to process the claim," which allows the Administrator an additional 90 days, *i.e.*, until Monday December 13, 2021. Mr. Fernandez has been unable to obtain employment since his termination on April 11, 2021 and is therefore initiating this action to seek redress available now under the FMLA.

claim against the Administrator, and his anticipated, potential breach of contract claim against RYAM, to provide notice to the Court and to Defendant, as a courtesy, and to forestall any later claim by either Defendant that Mr. Fernandez has improperly split his claims.)

## II.    THE PARTIES

2.      Mr. Fernandez received his degree in chemical engineering from Texas A&M in 1994, and his master's degree in business administration from Rice University in 2007.  He has spent his adult life working in senior management with companies engaged in the production, sale, and marketing of specialty materials, such as Dow Chemical, WR Grace, Albermarle, and Defendant.

3.      RYAM produces high-purity cellulose, packaging, paper, high-yield pulp, and forest products and operates plants in Fernandina, Florida; Jesup, Georgia; and in France, and Canada.

## III.    STATEMENT OF FACTS

### A.    RYAM Recruited Mr. Fernandez and the Parties Confirmed Key Employment Agreements in Writing

4.      On August 7, 2018, Mr. Fernandez was contacted by Russell Reynolds Associates, a professional recruiting agency, regarding a vice president position for which RYAM was seeking a qualified candidate. When contacted, Mr. Fernandez was employed as an executive with Albermarle, a specialty chemicals company, working in Charlotte, North Carolina.

5.      After RYAM and Mr. Fernandez negotiated the terms of his employment, RYAM sent Mr. Fernandez an email dated October 19, 2018 which included eight (8) attached written agreements, detailing the various terms of his employment.  Those pertinent here include: (1) RYAM's Offer Letter; (2) Relocation Policy; and (3) RYAM Non Change [sic] in Control Executive Severance Plan (the aforementioned "Severance Plan").  RYAM's

email is attached as Exhibit 1. The Offer Letter, Relocation Policy, and Severance Plan are attached as Exhibits 1A, 1B and 1C, respectively.[2]

6.      As stated in the Offer Letter, RYAM agreed to pay Mr. Fernandez a starting salary of $245,000 and guaranteed him an $80,000 bonus for 2018 because he was forfeiting a similar bonus by leaving Albermarle to accept RYAM's offer of employment.

7.      Exhibit 1A also shows that on October 23, 2018, Mr. Fernandez signed RYAM's offer to employ him in Jacksonville, Florida.

8.      Mr. Fernandez negotiated a December 5, 2018, start date with RYAM to allow time to finish work he was doing for Albermarle.  By email dated November 1, 2018, Mr. Posze stated, "… I appreciate the fact that you want to assist your current supervisor during your transition.  This speaks to your character and affirms that we made the right decision." Mr. Posze's email is attached as Exhibit 2.

9.      Mr. Fernandez started working with RYAM on December 5, 2018.

---

[2]      Mr. Fernandez has added highlighting to many of the exhibits referenced in the Complaint to make it easier to find the relevant portions.

*B. FMLA Allegations*

10.     On Friday January 8, 2021, Mr. Fernandez told Mr. Frank Ruperto, his immediate manager at RYAM and an Executive Vice President, that Fernandez would need a leave of absence of about four (4) weeks, beginning February 3, 2021. Mr. Fernandez explained that the leave was to care for his wife Claudia while she underwent and recovered from life-threatening surgery. Mr. Fernandez also told Mr. Ruperto that, due to the COVID-19 pandemic, no members of his or Claudia's family could travel to the United States to assist with Claudia's care after the surgery, and that he therefore would be the sole caretaker for Claudia and their six-year-old son, Matias. Mr. Fernandez also told Mr. Ruperto that his wife's medically supervised recovery after surgery was anticipated to take four (4) weeks, during which she would have limited or no use of her arms.

11.     Within approximately a day or two of Mr. Fernandez's request, Mr. Ruperto confirmed with Mr. Fernandez that he (Ruperto), had notified Mr. Posze, RYAM's CHRO, of Mr. Fernandez's request for leave, stating that

Mr. Posze had suggested that Mr. Fernandez use a combination of "sick leave" and "vacation days" for the requested leave.

12.    Mr. Fernandez thereafter asked Mr. Posze if there was paperwork that he needed to complete for his requested medical leave. Mr. Posze said no, that "paperwork is only to protect the company."

13.    On Monday January 11, 2021, Mr. Fernandez was told by RYAM's CEO, Mr. Paul Boynton, that Mr. Ruperto had resigned and would soon be departing.  At about the same time, Mr. Fernandez confirmed with Mr. Boynton that he (Boynton) had been notified of Mr. Fernandez's upcoming need for medical leave to care for his wife.

14.    When he asked for the leave described above, Mr. Fernandez was an "eligible employee," entitled to protected leave under the FMLA by virtue of 29 U.S.C. § 2611(2)(A), because he asked for leave to care for his "spouse," who had a "serious health condition," and his six-year-old "son," who was being home-schooled, as those terms are defined at 29 U.S.C. §2611 (13), (11)(A), and (B), and (12), respectively, as contemplated by the FMLA

at 29 U.S.C. § 2601(b)(2). RYAM was required under the FMLA to provide the leave requested by Mr. Fernandez, pursuant to 29 U.S.C. § 2612(a)(1)(C).

15.     RYAM never advised Mr. Fernandez that the medical leave he had requested was protected by the FMLA and never advised him of his rights under the FMLA.

16.     On January 12, 2021, due to Mr. Ruperto's impending departure, Mr. Fernandez's role was expanded to include responsibility for marketing and customer service, sustainability, research and development, and other strategic growth initiatives.  In this expanded role, Mr. Fernandez would now report directly to CEO Boynton, and would be a member of his leadership team. See January 12, 2021 press release attached as Exhibit 3.

### C. RYAM's FMLA Interference and Retaliation

17.     During the week of January 11, 2021, after Mr. Fernandez had confirmed with CEO Boynton that he (Boynton) was aware of Mr. Fernandez's upcoming leave, Mr. Boynton gave Mr. Fernandez a document captioned "Tomas Fernandez, Expectations of the Expanded Role,"

regarding the role into which Mr. Fernandez had been placed due to Mr. Ruperto's departure. A copy of the document is attached as Exhibit 4. On page 2, under the sub-heading "<u>Key traits of [RYAM] leadership</u>," Mr. Boynton included the following remarks directed specifically at Mr. Fernandez:

> These are <u>24/7/365</u> jobs as proven by the current leadership team, when necessary. (emphasis added)

18.    Mr. Fernandez's wife's surgery occurred in Jupiter, Florida on February 4, 2021.

19.    Mr. Fernandez did as Mr. Posze suggested and used his paid vacation and sick leave beginning February 3, 2021 to care for his wife.

20.    On Sunday Feb 7, 2021, at the direction of Mr. Boynton, Mr. Fernandez contacted Boynton to update him on Claudia's condition – three (3) days after her surgery.  Mr. Fernandez explained that Claudia was having a difficult, painful recovery, and that she was unable to use her arms. Mr. Fernandez explained that life-threatening surgery had been required to remove tissue from Claudia's breasts. Mr. Fernandez also shared that the surgery was necessary to evaluate whether the tissue was

cancerous, an issue of concern because Claudia's mother had died of breast cancer after she was initially diagnosed at approximately the same age as Claudia's age/37 at the time.  Mr. Boynton asked if Mr. Fernandez had any family members in the United States to assist in the care of his wife and son during this time and Mr. Fernandez said he did not. Mr. Boynton also asked repeatedly if Mr. Fernandez would be available to lead the preparation materials for a board of director's meeting scheduled for the week of February 15 and whether Mr. Fernandez would be available to present those materials to the board.  Mr. Fernandez agreed to do the tasks because he felt compelled to be available "24/7/365," as CEO Boynton had stated in the document captioned, "Tomas Fernandez, Expectations Jan-June 2021," previously identified as Exhibit 4 to this Complaint.

21.    Due to medical complications, Claudia was not able to use her arms until March 18, 2021, six (6) weeks after her surgery.

22.    Each day of Mr. Fernandez's "leave," he was the sole caregiver for his wife and six-year-old son, while the three of them resided in a single room in a Residence Inn located in Palm Beach Gardens. During virtually

every day of that "leave," through the end of March 2021, Mr. Boynton required that Mr. Fernandez work throughout the day, including weekends, and sometimes past midnight.  Because the phone reception was poor in his hotel room and his home-schooled six-year-old son was also in the room, it was frequently necessary for Mr. Fernandez to leave his wife's side in order to stand out in the parking lot to improve his mobile phone's reception, as required to perform various tasks for Mr. Boynton.

23.     Mr. Fernandez stopped using his paid time off and sick leave as of February 19, 2021 because he was working all day, every day of his "leave," from his hotel room in Palm Beach Gardens, *i.e.*, RYAM was not affording him "leave" of any type.  But he continued to be his wife's sole, non-medical caregiver through the end of March 2021.

24.     On April 1, 2021, CEO Boynton required that Mr. Fernandez come to work at RYAM's offices during the COVID pandemic, because members of the leadership team had begun returning to the office. Mr. Fernandez did as he was instructed and made several attempts throughout the day to meet with Mr. Boynton. But Mr. Boynton repeatedly refused to

meet with him other than to briefly stop by Mr. Fernandez's office once, to ridicule him for purportedly having an insufficient amount of personal effects in his office.

25.    April 6, 2021, was the first time Mr. Boynton conducted Mr. Fernandez's performance review because, until January 12, 2021, Mr. Fernandez had never reported directly to Mr. Boynton.

26.    During the review, Mr. Boynton rated Mr. Fernandez's performance as "not meeting expectations," complaining about his alleged "lack of responsiveness." During the twelve weeks that Mr. Fernandez had been reporting to Mr. Boynton as of April 6, 2021, he had been caring for Claudia and Matias on a full-time basis for approximately eight of those weeks, in addition to performing his job full-time for Mr. Boynton.

### D.  RYAM Involuntarily Terminated Mr. Fernandez on a Sunday Morning

27.    On Sunday morning, April 11, 2021, Mr. Posze, RYAM's CHRO, texted Mr. Fernandez while he (Fernandez) was performing work at home for RYAM. The text asked that Mr. Fernandez call Mr. Posze, which

he promptly did. When the men spoke by phone, Mr. Posze asked Mr. Fernandez to meet with him that morning and told him to bring his company laptop.  This prompted Mr. Fernandez to ask Mr. Posze if he (Fernandez) was "being exited" from the company, to which Mr. Posze said, "Yeah." A copy of Mr. Posze's text message is attached as Exhibit 5.

28.   The Sunday morning meeting occurred outside the Whole Foods Market in South Jacksonville Beach. Mr. Posze used his mobile phone, on "speaker," to include Ms. Bethany Heathwell, a RYAM HR representative, in the conversation. Mr. Posze began by stating "We're here to talk about your resignation." In response, Mr. Fernandez immediately stated that he hadn't resigned and that he did not want to resign.

29.   Mr. Posze then told Mr. Fernandez that he owed RYAM $172,277, pursuant to the "Relocation Policy" attached as Exhibit 1B.[3]

30.   In truth, Mr. Fernandez owed nothing to RYAM under the Relocation Policy because Mr. Fernandez had not voluntarily left his

---

[3]    The Relocation Policy does not apply to Mr. Fernandez because he was involuntarily terminated, *i.e.*, the Policy applies only to certain employees who "voluntarily [leave] Rayonier Advanced Materials…." See Exhibit 1B at page 1.

employment with RYAM. In fact, RYAM owed Mr. Fernandez, a "Tier IV" executive, approximately $300,000, plus other valuable benefits not addressed by Mr. Posze, under the Severance Plan attached as Exhibit 1C because RYAM involuntarily terminated Mr. Fernandez during that Sunday morning meeting.[4]

31. During that Sunday morning meeting, Mr. Posze next presented Mr. Fernandez with an alternate proposition which would not require that Mr. Fernandez pay anything to RYAM, telling him (Fernandez) that he could "come out $90,000 ahead." Mr. Posze handed Mr. Fernandez a piece of paper with numbers on it, attached as Exhibit 6, offering to pay Mr. Fernandez $90,118 as a "Potential Transition payment," if Mr. Fernandez would sign a complete release of any and all claims against RYAM, including any claims under the FMLA. A copy of the Release is attached as Exhibit 7. Mr. Fernandez again expressly stated that he had not resigned and did not want to resign.

---

[4]      In his email of October 19, 2018, attached as Exhibit 1, Mr., Posze advised Mr. Fernandez that "Your position would be eligible for the Tier IV benefits," referring to the benefits in "Table A" on pages 6-7 of the Severance Plan attached as Exhibit 1C.

32.    Mr. Posze also handed Mr. Fernandez a letter post-dated April 12, 2021 stating, in part, "… [RYAM] has accepted your resignation effectively tendered on Friday April 9, 2021. The conclusion that you have effectively resigned is based on [listing purported 'reasons']," advising Mr. Fernandez that he had until April 25, 2021, to submit a check payable to RYAM in the amount of $172,277.03.  That letter is attached as Exhibit 8.[5]

33.    After firing Mr. Fernandez, RYAM accurately reported his termination as "involuntary" to the third-party administering RYAM's COBRA obligations. Because his termination was involuntary, Mr. Fernandez's COBRA premiums were paid by the federal government pursuant to the American Rescue Plan Act of 2021, 117 P.L. 2, 135 Stat. 4, 117 P.L. 2, 135 Stat. 4, (enacted March 11, 2021). Mr. Fernandez brought this to the attention of RYAM several months later when discussing the involuntary nature of his termination, whereupon RYAM reversed its position and changed Mr. Fernandez's termination to "voluntary." This

---

[5]    Ironically, on the last page of Exhibit 8, Mr. Posze refers to Mr. Fernandez's "2.3 years of employment with the Company," while demanding payment because Mr. Fernandez supposedly voluntarily terminated his employment within two years. (emphasis added)

15

about-face by RYAM required that Mr. Fernandez, unemployed since April 11, 2021, reimburse RYAM's third party administrator for the several COBRA payments already paid under the Rescue Plan and that he begin paying $1,985.88 each month to keep his family insured.

34.    When Mr. Fernandez attempted to resolve his FMLA claims with RYAM, it responded by filing suit in state court against him, alleging breach of contract under the Relocation Policy attached as Exhibit 1B.

35.    At the time it filed its state court action, RYAM knew it was frivolous because RYAM knew that it *in*voluntarily terminated Mr. Fernandez (when he had, and still has, no other employment prospects), which makes the Relocation Policy inapplicable to his termination.

36.    Mr. Fernandez has lost wages, benefits, and privileges of employment since being involuntarily terminated by RYAM. His losses are ongoing despite his diligent efforts -- including traveling during the COVID-19 pandemic to participate in several out-of-state job interviews -- to find employment since his termination. Moreover, RYAM has damaged

Mr. Fernandez's earning capacity by terminating him under false pretenses. The effects of that injury are ongoing.

37.    Mr. Fernandez has hired undersigned counsel to represent him in this action and is required to compensate them for their services.

38.    Mr. Fernandez is likely to incur attorneys' fees and expenses in defending against RYAM's frivolous state court action which RYAM filed to retaliate against Mr. Fernandez because he exercised, or attempted to exercise, his rights under the FMLA.

## IV.    COUNTS

### COUNT I

### (FMLA INTERFERENCE)

39.    Plaintiff re-alleges paragraphs 10 through 38.

40.    CEO Boynton's document captioned "Tomas Fernandez, Expectations Jan – June 2021," (Exhibit 3), advising him that Mr. Boynton expected Mr. Fernandez to be available "24/7/365," delivered virtually immediately after Mr. Fernandez asked for leave which was protected

under the FMLA, interfered with, restrained, or denied Mr. Fernandez's exercise of, or attempt to exercise, his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

41.     By failing to inform Mr. Fernandez of his FMLA rights, RYAM interfered with, restrained, or denied his exercise of, or attempt to exercise, his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

42.     By requiring that Mr. Fernandez perform substantial work during virtually every day of his wife's nearly two months of recovery while Mr. Fernandez was also caring for his 6-year-old son – leave that should have been afforded Mr. Fernandez under the FMLA without interference from RYAM -- RYAM interfered with Mr. Fernandez's rights under the FMLA, including his right to uninterrupted leave to care for his wife and son, in violation of 29 U.S.C. § 2615(a)(1).

43.     RYAM's termination of Mr. Fernandez interfered with his rights under the FMLA, including his right to be restored to the position he held when his leave commenced, or an equivalent position, in violation of

29 U.S.C. § 2614 (a)(1)(A),(B) and interfered with his rights in violation of 29 U.S.C. § 2615(a)(1).

## COUNT II

### (FMLA RETALIATION)

44.     Plaintiff re-alleges paragraphs 10 through 38.

45.     CEO Boynton rated Mr. Fernandez's performance as "not meeting expectations" in retaliation for Mr. Fernandez exercising, or attempting to exercise, his rights protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

46.     RYAM terminated Mr. Fernandez's employment in retaliation for exercising, or attempting to exercise, his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

47.     RYAM falsely accused Mr. Fernandez of resigning when it involuntarily terminated his employment, in retaliation for exercising, or attempting to exercise, his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

48.     RYAM has denied Mr. Fernandez the severance benefits he is entitled to under the Severance Plan attached as Exhibit 1C, in violation of 29 U.S.C. § 2614(a)(2), and RYAM's denial of those benefits is an act of retaliation against Mr. Fernandez because he exercised, or attempted to exercise, his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

49.     RYAM filed suit against Mr. Fernandez in state court claiming that Mr. Fernandez owes RYAM nearly $200,000 under its Relocation Policy, even though RYAM knows that the Relocation Policy is inapplicable because RYAM involuntarily terminated Mr. Fernandez – and RYAM did this in retaliation for Mr. Fernandez exercising, or attempting to exercise, his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

50.     RYAM's action in changing Mr. Fernandez's termination status from "involuntary" to "voluntary," in order to deny Mr. Fernandez the COBRA payments he was otherwise entitled to receive, was done in retaliation for the exercise, or attempted exercise, of his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

V.    **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands under each Count:

a.    Lost past earnings, wages, salary, bonuses, fringe benefits, and all other employment benefits lost because of Defendant's unlawful termination of Mr. Fernandez's employment (collectively referred to as **"back pay"**)

b.    Interest on the amount of back pay as of the date of judgment.

c.    Liquidated damages equal to the sum of the amounts described in paragraphs "a." and "b.," above (collectively referred to as **"liquidated damages").**

d.    Retroactive reinstatement to Mr. Fernandez's position or its equivalent, with "back pay" and "liquidated damages" (hereafter collectively referred to as **"retroactive reinstatement"**).

e.    In the event retroactive reinstatement is not feasible, then in addition to "back pay," and "liquidated damages," Plaintiff demands all earnings, wages, salary, bonuses, and other employment benefits he is likely

to lose in the future because of his unlawful termination and due to his diminished earning capacity.

f. Attorneys' fees and expenses, including expert witness fees as allowed by law, all recoverable statutory costs, and all litigation expenses not otherwise expressly allowed by rule or statute related to this action and related to the state court action which RYAM has filed against him to retaliate for his exercise, or attempt to exercise, his rights under the FMLA.

g. All other legal or equitable relief to which Mr. Fernandez is entitled as a matter of law or equity; and

h. Trial by jury of all issues so triable.

Respectfully submitted,


_s/Scott Thomas Fortune_
FORTUNE LAW OFFICES, PA.
Scott Thomas Fortune,
Trial Counsel for Plaintiff
Florida Bar No. 342815
SFortune@FortuneLegal.com
814 1st St. N., Suite 100
Jacksonville Beach, Florida 32250
Telephone: (904) 246-2125
Mobile: (904) 333-3965
Facsimile: (904) 246-1551

Attorneys for Plaintiff
**Trial Counsel**